Gerald W. **CHRISTOPHER,**
et al., Plaintiffs,

v.

**MOBIL OIL CORPORATION**
et al., Defendants.

No. 1:89–CV–0653.

United States District Court,
E.D. Texas,
Beaumont Division.

June 1, 1993.

William E. Townsley, Townsley, Hanks & Townsley, Beaumont, TX, W. Randolph Barnhart, Thomas L. Roberts, Rodney R. Patula, Michael G. Bohn, Bradford J. Lam, Peter W. Pryor, Elizabeth C. Moran, Gary J. Benson, Pryor Carney & Johnson, Englewood, CO, for plaintiffs.

Michael E. Tigar, Austin, TX, Loren Kieve, Mary Ann Doyle, Devevoise & Plimpton, Washington, DC, Robert J. Hambright, Gilbert Irvine Low, Orgain Bell & Tucker, Beaumont, TX, for defendants.

## *MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED ORIGINAL COMPLAINT*

SCHELL, District Judge.

CAME ON TO BE CONSIDERED Plaintiffs' Motion for Leave to File Second Amended Original Complaint. After reviewing the motion, the response in opposition, the reply to the response in opposition, the letters submitted by both sets of parties, and the pleadings of record, the court is of the opinion that the motion should be **GRANTED.**

### I. BACKGROUND

In July of 1989, Gerald Christopher, Charles Prunty, and Billy Turner (hereinafter "Plaintiffs") filed suit in this court against Mobil Oil Corporation, Retirement Plan of Mobil Oil Corporation, and Rex Adams (hereinafter "Mobil"), alleging that Mobil had engaged in conduct that constituted age discrimination in violation of the Age Discrimination in Employment Act (ADEA), had committed acts of common-law fraud, civil conspiracy, unlawful interference with contract rights, negligence, gross negligence, and had breached the employment contract. Plaintiffs also alleged, in brief and conclusory fashion, that if the state law claims were held to be preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., then Mobil's conduct violated § 510 of ERISA, 29 U.S.C. § 1140, by interfering with an employee's attainment of rights under ERISA. Plaintiffs sought to recover wages and benefits they would have received had they continued working until normal retirement age. Plaintiffs also sought reinstatement on the ADEA claims.

Mobil moved for summary judgment on the ADEA and state law claims. The court granted Mobil's motion for summary judgment, finding that the ADEA and state law claims were time barred, that Plaintiffs had not been constructively discharged in violation of the ADEA, and that Plaintiffs' claims of discrimination arose from changes in the fringe benefits available under Mobil's Retirement Plan, not from any conduct related to the nonfringe benefit aspects of Plaintiffs' employment, and were therefore not within the scope of the ADEA pursuant to § 4(f)(2), 29 U.S.C. § 623(f)(2). (see Order, signed June 22, 1989). Mobil also simultaneously moved for judgment on the pleadings and to dismiss the remaining state law claims because the state law claims were preempted by ERISA and Plaintiffs did not have standing as plan "participants" to pursue such ERISA claims. Mobil argued that because Plaintiffs did not have a cause of action under ERISA the court lacked jurisdiction to hear their claims. The court granted all of Mobil's motions.

Plaintiffs appealed this court's decisions to the Fifth Circuit. In January of 1992, the Fifth Circuit affirmed in part and reversed and remanded in part. *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). The Fifth Circuit affirmed the court's rulings on the ADEA claims and the preemption of the state law claims by ERISA. *Id.* at 1217, 1220. How-

ever, the court's ruling that Plaintiffs lacked standing to assert ERISA claims because they were no longer "participants" under the Mobil Retirement Plan (hereinafter "Plan") was reversed and remanded. *Id.* at 1223. The Fifth Circuit stated:

> Because appellants pleaded their ERISA claims only as contingent on preemption of their state law claims, and because the district court did not rule on the merits of the ERISA claims, appellants have not fleshed out their ERISA claims and theories, or even identified with precision which sections of ERISA they claim were violated. However, their allegations do at least suggest an assertion that they were constructively discharged in violation of section 510 and that but for Mobil's nondisclosure they would be covered employees with standing to challenge the plan amendment ..... we cannot now foreclose the possibility that they could prove facts that would create standing for them...... Of course, appellants can, and doubtless should, be required to plead their ERISA claims with greater specificity.

*Id.* The Fifth Circuit stressed in its opinion that it was making no determination as to whether or not Plaintiffs would be able to establish a violation of § 510, only that they should be allowed the opportunity on remand. *Id.*

After the case was remanded to this court, Plaintiffs were ordered to "replead their ERISA claims with greater specificity and identify with precision which sections of ERISA they claim were violated by the defendants." (see Order to Replead, March 16, 1992, p. 1). Plaintiffs filed their First Amended Original Complaint on April 10, 1992. The First Amended Original Complaint specifically alleged that Mobil's conduct violated ERISA § 510, 29 U.S.C. § 1140. (see Plaintiffs' First Amended Complaint, p. 17). Plaintiffs alleged that fraudulent acts on the part of Mobil had induced them to retire early and lose benefits to which they were entitled under the Plan. (see Plaintiffs' First Amended Complaint, p. 17–18). Plaintiffs specifically alleged that Mobil failed to inform Plaintiffs of an amendment to the Plan, which gave an employee the option to keep his or her job and the possibility of still receiving a lump sum payment upon retirement, in an effort to induce early retirements. Apparently Plaintiffs did not become aware of this amendment until the information was discovered during a similar trial in Colorado involving Mobil in December of 1988. (Plaintiffs' First Amended Original Complaint, p. 15). Plaintiffs contend in their First Amended Complaint that because Mobil intentionally concealed this information, they have a viable cause of action as "participants" in the Plan under § 510 of ERISA that is not time-barred.

Mobil filed a motion for summary judgment on May 5, 1992. In the motion for summary judgment, Mobil argued that any § 510 claims asserted by Plaintiffs were barred by the statute of limitations. The court, assuming that Plaintiffs have standing to assert a § 510 claim, has this day denied Mobil's motion, determining that if Plaintiffs do have standing to assert a § 510 claim it is not barred by the statute of limitations.

On December 9, 1992, before the ruling on Mobil's motion for summary judgment and eight months after the court ordered Plaintiffs to replead their causes of action with specificity, Plaintiffs moved for leave to file their Second Amended Original Complaint. Plaintiffs proposed pleading states as a separate claim for relief alleged violations of fiduciary duties owed by Mobil to Plaintiffs pursuant to ERISA §§ 404 and 405. 29 U.S.C. §§ 1104 and 1105. Mobil has contested the motion for leave to amend on several bases.

## II. MOTION FOR LEAVE TO AMEND COMPLAINT

 Leave to amend pleadings "... shall be freely given when justice so requires." Fed.R.Civ.Proc.Rule 15(a). However, it is by no means automatic. *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); *Clauder v. Sears, Roebuck and Company,* 805 F.Supp. 445 (E.D.Tex.1992). The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Id.* "In exercising this discretion, a district court considers a variety of

factors, such as undue delay, bad faith, undue prejudice to the opposing party by allowing the amendment, and futility of the amendment." *Davis v. United States,* 961 F.2d 53, 57 (5th Cir.1991) (referring to *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

Mobil argues that Plaintiffs' motion for leave to amend should be denied because (1) the proposed amended pleading is merely an attempt by Plaintiffs to avoid an adverse summary judgment ruling on the § 510 claim (Opposition to Plaintiffs' Motion For Leave to File Second Amended Complaint, p. 5; hereinafter "Opposition"); (2) the delay by Plaintiffs in asserting the "new" breach of fiduciary duty claim is inexcusable and "suggests a lack of sincerity that justifies denying leave to amend," (Opposition, p. 9); (3) the proposed amended pleading would unduly prejudice Defendants because it "might" require a rebriefing of the limitations issue on the breach of fiduciary duty claims and create a standard that would permit a party to replead any time new, favorable case law is decided (Opposition, p. 9–10); and (4) that the proposed amended pleading is futile because Plaintiffs have not stated an actionable claim for relief based on an alleged breach of fiduciary duty (Opposition, p. 11). The court will analyze each of the relevant factors and the allegations by Mobil in order to determine whether Plaintiffs should be granted leave to amend their complaint.

## A. BAD FAITH

■ Mobil alleges that Plaintiffs only raise their breach of fiduciary duty claims under ERISA §§ 404 and 405 in an attempt to circumvent Mobil's pending motion for summary judgment on the § 510 claims and that those claims are raised in bad faith. Mobil argues that Plaintiffs' Motion for Leave to File Second Amended Original Complaint "amounts to nothing more than a belated recognition that their present ERISA claims are barred by the statute of limitations." (Opposition, p. 6). According to Mobil, from the outset of this action Plaintiffs have made multiple litigation a hallmark of their strategy. Similar actions in Colorado, including a large class action, and another case in the

Eastern District of Texas, *Falcon, et al. v. Mobil Oil Corporation, et al.,* 89—CV—654, are pointed to by Mobil as part of this multiple litigation strategy and evidence of Plaintiffs' bad faith. Mobil alleges that Plaintiffs continue to reurge the same invalid causes of action in each case and seek to add the fiduciary duty claims now in an attempt to prevent dismissal of the pending claims in this case.

Plaintiffs argue that Mobil bears as much, if not more, responsibility than do Plaintiffs for the multiple litigation surrounding the Plan. Plaintiffs point out that when there are thousands of claimants spread throughout the country that it is not unusual that more than one lawsuit concerning the same incident is filed in more than one jurisdiction. It is further alleged by Plaintiffs that Mobil "strenuously resisted a consolidation of this case and the *Falcon* case with and into the earlier-filed class action in Colorado." (see Plaintiffs' Reply, p. 6; hereinafter "Reply"). Finally, it is Plaintiffs' position that they made good faith and reasonable efforts, consistent with then-existing case law and precedent, to identify and include all viable ERISA claims in the First Amended Original Complaint. It was only after the emergence of new case law that Plaintiffs believed they could assert a valid individual cause of action under ERISA based on a breach of fiduciary duty.

As Mobil points out, the Fifth Circuit has approved a district court's ruling that "a party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint." *Overseas Inns S.A.P.A. v. United States,* 911 F.2d 1146, 1151 (5th Cir.1990). But the Fifth Circuit expressly reiterated that the decision on whether or not to allow the amended pleading is solely within the discretion of the trial court. *Id.* at 1150. The plaintiff in that case waited over two and a half years before seeking to amend its complaint after extensive pretrial activity had taken place and after a motion for summary judgment had been on file for more than a year. *Id.* at 1151. This case is distinguishable from *Overseas Inns.* Plaintiffs have filed their motion for leave to amend only eight months

after filing their First Amended Complaint, before any significant pretrial activity such as discovery has taken place, and six months after the motion for summary judgment was filed by Mobil. The motion for leave to amend was filed less than two months after becoming aware of a potential claim under §§ 404 and 405 based upon the October 13, 1992, decision in *Drennan v. General Motors Corp.*, 977 F.2d 246 (6th Cir.1992). Taking all these factors into account, the court does not believe Plaintiffs have sought leave to amend in bad faith.

## B. UNDUE DELAY

■ Mobil claims "[p]laintiffs have no excuse for not pleading a breach of fiduciary duty claim earlier—in fact, they admit that they could have brought this claim long ago." (Opposition, p. 6). According to Mobil, Plaintiffs knew of the facts and possible legal theories supporting a breach of fiduciary duty claim from the outset of this case in 1989 and yet still waited eight months after being ordered to replead in 1992 to assert any fiduciary duty claims. (Opposition, p. 6–7). Mobil points out that Plaintiffs filed their motion for leave to amend a full six months after full briefing on Mobil's summary judgment motion on the § 510 claims. Mobil, citing *Gregory v. Mitchell*, 634 F.2d 199 (5th Cir.1981), argues that Plaintiffs have shown a lack of diligence in timely stating a claim, and in order to be granted leave to amend must show the delay was due to oversight, inadvertence, or excusable neglect.

Plaintiffs argue that they acted reasonably in not attempting to assert a breach of fiduciary duty claim before filing their motion for leave to amend in December 1992. (Reply, p. 14). Under § 409 of ERISA an individual participant does *not* have standing to assert a breach of fiduciary duty claim in his own right, but may only pursue such a claim on behalf of the entire ERISA plan. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). However, Plaintiffs argue that recent decisions in the Second and Sixth Circuits, both decisions handed down after the First Amended Original Complaint was filed, indicate that Plaintiffs do have standing to assert individual claims under §§ 404 and 405. *See Financial Institutions Retirement Fund v. O.T.S.*, 964 F.2d 142 (2d Cir.1992); *See also Drennan*, 977 F.2d 246. Plaintiffs apparently rely more heavily on *Drennan* and point out that *Drennan* was decided on October 13, 1992, less than two months before they moved for leave to amend. (Reply, p. 17). Plaintiffs contend that they were proceeding in good faith in their First Amended Original Complaint by not asserting a separate claim for breach of fiduciary duty and are now proceeding in good faith by asserting the new claim shortly after the availability of new and relevant case law. (Reply, p. 17).

The Fifth Circuit has emphasized that analyzing a motion for leave to amend is a difficult task requiring the district court to insure that a party has a fair opportunity to present claims or defenses and to protect the district court from being "imposed upon by the presentation of theories seriatim." *Gregory*, 634 F.2d at 203. The *Gregory* court also held that at some point in time, delay on the part of a plaintiff can be procedurally fatal. *Id.* Further, if the delay in filing a motion for leave to amend is particularly egregious and is raised late in the pretrial life of a lawsuit, the burden shifts to the movant to show that the delay was "due to oversight, inadvertence, or excusable neglect." *Little v. Liquid Air Corporation*, 952 F.2d 841, 846 (5th Cir.1992) (citing *Gregory* ).

The court has already noted that this lawsuit is not late in its pretrial life despite the fact that it was filed over three years ago. A trial date has not been set and no significant discovery has been conducted because of the dispositive motions filed and the appeal to the Fifth Circuit generated by the decisions of this court on these motions. The eight month delay by Plaintiffs in seeking leave to amend can hardly be considered egregious in light of the circumstances of this case and when compared to the cases cited by Mobil denying a plaintiff leave to amend.

■ Mobil points to both *Gregory* and *Little* as cases that support denying leave to amend because of the delay by Plaintiffs in seeking leave to amend. The *Gregory* court did not recite how long that case had been on

file before the plaintiffs sought leave to amend. But in *Gregory,* leave to amend in order to add claims that would have realigned the parties and changed the entire complexion of the lawsuit was denied. *Gregory,* 634 F.2d at 202. In *Little,* the Fifth Circuit observed that the plaintiffs waited well over a year after the action had been instituted, several months after discovery had been completed, and long after defendants had filed dispositive summary judgment motions to seek leave to amend. Much like this case, both *Gregory* and *Little* had dispositive motions for summary judgment filed by the defendants pending when leave to amend was sought. The Fifth Circuit, in discussing the effect of pending motions for summary judgment on a motion for leave to amend, has said, "a pending motion for summary judgment does not *in itself* extinguish a plaintiff's right to amend a complaint." *Little,* 952 F.2d at 846 n. 2 (referring to *Zaidi v. Ehrlich,* 732 F.2d 1218, 1220 (5th Cir.1984)). Therefore, the decision on whether or not to allow leave to amend requires a multifactor analysis wherein the district court must attempt to offer the parties a fair opportunity to present all valid claims, but keep the lawsuit proceeding at a reasonable rate, even if it means denying a party leave to amend its complaint.

Although there was a pending motion for summary judgment filed by Mobil six months before Plaintiffs moved for leave to amend this complaint, this fact is only one of the factors that must be considered and is not dispositive in making the decision to allow or deny leave to amend. Further, the motion for summary judgment has now been denied. The court believes that Plaintiffs' motion for leave to amend was not filed with undue delay.

## C. UNDUE PREJUDICE TO OPPOSING PARTY

██ Mobil contends that granting Plaintiffs' motion to amend might require the briefing and arguing of a new summary judg-ment motion regarding the statute of limitations on a breach of fiduciary duty claim. (Opposition, p. 9) Mobil argues that such a motion might rely on the same facts and legal analysis employed in earlier summary judgment motions and that such duplication of effort will be a waste of judicial resources and result in undue prejudice to Mobil. (Opposition, p. 10). Mobil also voices concern that allowing Plaintiffs leave to amend their complaint at this stage of the litigation because of *Drennan* or *O.T.S.* "would create a standard that would permit a party to replead any time an arguably favorable case is decided—eviscerating the role of summary judgment and wasting judicial resources." (Opposition, p. 10). Citing *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th cir.1967), Mobil points out that the value of summary judgment procedure will be dissipated if a party is allowed to amend its pleadings at any time solely in order to avoid an adverse disposition.

Plaintiffs argue that their breach of fiduciary duty claims under ERISA have legal significance independent of the § 510 claims and are not asserted to avoid an adverse disposition of the pending motion for summary judgment. (Reply, pp. 8–9). Plaintiffs therefore contend that because of this "independent significance," the disposition of the breach of fiduciary duty claims is not necessarily controlled by the same statute of limitations argument made by Mobil against the § 510 claims. (Reply, p. 10). It is Plaintiffs' position that Mobil's claim of undue prejudice is based upon a *wrong* premise. Plaintiffs contend that while Mobil argues that application of the statute of limitations can dispose of both the § 510 claims and the fiduciary duty claims, the fiduciary duty claims are actually governed by a different statute of limitations. (Reply, p. 13). That statute of limitations is found at § 413 of ERISA, 29 U.S.C. § 1113, and, in the case of fraud or concealment, runs for six years after actual discovery of the alleged breach.[1] Plaintiffs

---

1. **Section 413** of ERISA reads as follows:

 No action may be commenced under this title with respect to a fiduciary's breach of responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

 (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or

contend that even if the six-year period of § 413 began to run in 1984, when Mobil first announced changes to the Plan, the statute of limitations would not have run until 1990, which is one year after this lawsuit was filed. (Reply, p. 13).

■ The court shares Mobil's concern that allowing parties to amend complaints when there is a pending motion for summary judgment will dissipate the value of summary judgment procedure. A party should not be allowed to amend its complaint, after months of undue delay, for the sole purpose of pleading around an adverse summary judgment disposition. But Rule 15(a) requires that leave to amend pleadings "... be freely given when justice so requires." Hence, the question of undue prejudice to the party opposing a motion for leave to amend, when there is a pending motion for summary judgment, must be examined carefully.

Mobil may or may not feel compelled to brief and argue a new motion for summary judgment on the breach of fiduciary duty claims. But as Plaintiffs point out, the breach of fiduciary duty claims have legal significance independent of the statute of limitations defense that Mobil is asserting in its motion for summary judgment. A breach of fiduciary duty claim is governed by the statute of limitations found at § 413 of ERISA. Assuming, without deciding that the six-year period of § 413 applied to this case, it cannot be seriously argued that the six-year statute of limitations had run before the filing of this lawsuit. Therefore, in addition to the fact that the court has this day denied Mobil's motion for summary judgment on the § 510 claims, Plaintiffs breach of fiduciary duty claims would not be barred by any statute of limitations defense that Mobil has already argued in its motion for summary judgment. In reviewing a motion for leave to amend, the court looks for *undue* prejudice to the opposing party. Particularly in light of the fact that Mobil's pending motion for summary judgment has already been

denied, the court does not find that it would be unduly prejudicial to Mobil if leave to amend is granted.

## D. FUTILITY OF PROPOSED AMEND-ED PLEADING

The court now must determine whether the proposed amended pleading states a viable claim for relief. As this court observed in an earlier case, "[w]here the proffered amended complaint would be futile, in that it fails to state a claim upon which relief can be granted, leave to amend may be denied." *Clauder,* 805 F.Supp. at 447.

Mobil strenuously argues that Plaintiffs have not stated a claim for relief for breach of fiduciary duty under ERISA. (Opposition, p. 11). Mobil argues that individual participants may sue for only two kinds of relief based on an alleged breach of fiduciary duty under ERISA §§ 404 and 405: (1) legal or equitable relief from a fiduciary, which inures to the benefit of the plan as a whole, ERISA § 409(a), 29 U.S.C. § 1109(a), 1132(a)(2), or (2) benefits under the plan, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Opposition, p. 11). Mobil believes that Plaintiffs have not properly asserted these claims because they seek relief for themselves, not the whole plan, and because Plaintiffs are not seeking to recover benefits to which they are entitled under the Plan.

Plaintiffs argue that breach of fiduciary duty claims brought under §§ 404 and 405 may be brought by individuals seeking relief in their own right. (Reply, p. 18). Plaintiffs contend that Mobil's view is too limited and that they are entitled to bring breach of fiduciary duty claims in their own right under § 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), to recover "appropriate equitable relief," including plan benefits, for breach of the fiduciary duties listed in §§ 404 and 405. (Reply, pp. 18, 20). The Plaintiffs agree that breach of fiduciary duty claims brought under § 409 of ERISA are limited to

(B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

relief that inures to the benefit of the whole Plan. (Reply, p. 18). They contend, however, that participants and beneficiaries may bring actions under § 502(a)(3)(B) to obtain "other appropriate equitable relief" to redress violations of § 404 and § 405 pertaining to the duties of plan fiduciaries. (Reply, pp. 15 and 18).

### *1. Benefits Under the Plan*

■ Plaintiffs contend that they are entitled to recover benefits which they were eligible for under the Plan before retirement, but which never vested in them because they were fraudulently induced to retire. (Reply, p. 19). Plaintiffs claim that they lost these benefits, in the form of penalties, because they retired early.

Mobil argues that Plaintiffs cannot state a claim for benefits under § 502(a)(1) of ERISA based on an alleged breach of fiduciary duty. (Opposition, p. 12). It is Mobil's position that because Plaintiffs elected to retire early and receive a lump sum payment of their vested benefits, they are no longer "participants" under ERISA and have no standing to assert a claim seeking to recover benefits under the Plan.

"ERISA grants standing to a 'participant' to bring a civil action to enforce his rights under the terms of a plan or to enforce the provisions of ERISA." *Christopher,* 950 F.2d at 1220; ERISA § 502(a), 29 U.S.C. § 1132(a).[2] "Participant" is defined to include "any employee or former employee ..... who is or may become eligible to receive a benefit of any type from an employee benefit plan." *Id.;* ERISA § 3(7), 29 U.S.C. § 1002(7). The Supreme Court has interpreted "former employee" to mean former employee[s] who have 'a colorable claim' to vested benefits or who 'have a reasonable expectation of returning to covered employ-

ment.' *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). The "may become eligible" language of § 3(7) has been construed to mean that a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. *Christopher,* 950 F.2d at 1220 (citing *Firestone,* 489 U.S. at 117, 109 S.Ct. at 958).

Whether Plaintiffs fit within these definitions and standards was addressed by the Fifth Circuit in *Christopher.* In response to Mobil's argument that these same plaintiffs did not have standing to assert a claim under ERISA because they had neither a colorable claim for vested benefits nor a reasonable expectation of returning to covered employment, the *Christopher* court said "[w]e have held that where, as here, retired employees received in a lump sum benefits that were concededly all to which they were entitled under a plan as it existed at their retirement, their claim is for damages, not *vested benefits*" (emphasis added). *Id.* at 1220–21 [citing *Yancy v. American Petrofina, Inc.,* 768 F.2d 707, 708–9 (5th Cir.1985) ]. However, the court, noting that Plaintiffs had requested reinstatement on their ADEA claims, refused to find that these Plaintiffs lacked a reasonable expectation of returning to covered employment. *Id.* The court, in addressing a plaintiff's standing to assert a claim for benefits in a case alleging discharge, determined that *Firestone* could not be read to reduce the standing question to a straightforward formula applicable in all cases. *Id.* In discussing a former employee's standing to assert a claim when that former employee is no longer employed and there are allegations that his retirement was

**2.** Pertinent excerpts of § 502(a) of ERISA read as follows:
(a) **Persons empowered to bring a civil action.** A civil action may be brought—
 (1) by a participant or beneficiary—
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

procured as the result of malfeasance on the part of the employer, the court observed:

It would be unusual if in that situation his ability to assert a claim at all turned on whether or not his requested relief included reinstatement; it would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee *would* be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing.

*Id.* at 1221.

It is necessary to point out that the *Christopher* opinion addressed standing to assert a claim alleging wrongful discharge under § 510. However, the Fifth Circuit used strong language which seemed to indicate its willingness to grant standing to claimants alleging a violation of ERISA who would have been participants under a plan but for some type of wrongful conduct on the part of a plan or its administrators. "[T]he standing question and the merits of an employee's claim are unavoidably intertwined to some degree; whether a plaintiff has standing to assert ERISA rights may depend upon whether he can establish a discharge or *some other conduct* (emphasis added) in violation of ERISA, but for which he would have standing." *Id.* at 1222. Therefore, the court appeared to indicate that if a plaintiff can establish some kind of conduct that violated ERISA there could be standing to pursue a claim based on the circumstances of each case.

However, the Fifth Circuit has never recognized a cause of action alleging breach of fiduciary duty that permitted the recovery of benefits that had never vested in an employee before he retired, particularly when that employee had retired and accepted all of his benefits that were vested at retirement. As previously mentioned, the *Christopher* court found in situations such as the one that exists in this case that former employees' claims are for damages, not vested benefits. *Christopher*, 950 F.2d at 1221. Plaintiffs retired at the beginning of 1985. At that time they took with them, in the form of a lump sum payment, all the benefits that were vested in

them at that time. The *Yancy* court found, "[T]he term 'participant' encompasses only those former employees who are owed *vested* (emphasis added) benefits." *Yancy*, 768 F.2d at 709. As in *Yancy*, Plaintiffs here have received all benefits that were vested in them prior to retirement. Therefore, Plaintiffs must seek here some form of damages or relief other than benefits under the Plan.

### 2. Other Appropriate Equitable Relief

 Section 502(a)(3) of ERISA provides for relief apart from an award of benefits due under the terms of a plan. *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.), cert. denied, — U.S. —, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). Damages that give a plan beneficiary more than he or she is entitled to receive under the strict terms of a plan are typically termed "extracontractual." *Id.* As the *Corcoran* court observed, "§ 502(a)(3) by its terms permits beneficiaries to obtain 'other appropriate equitable relief' to redress (1) a violation of the substantive provisions of ERISA or (2) a violation of the terms of the plan." *Id.*

The question of whether extracontractual damages are available to a beneficiary under § 502(a)(3) has been left open by the Supreme Court. *Id.* (citing *Russell*, 473 U.S. 134, 105 S.Ct. 3085). In *Russell*, the Court held that extracontractual damages were not available under § 409(a), holding that § 409(a)(1) authorized only actions on behalf of a plan as a whole, not on behalf of individual beneficiaries. (*Russell*, 473 U.S. at 147, 105 S.Ct. at 3092.) But as the *Corcoran* court noted, "because the beneficiary [in *Russell*] expressly disclaimed reliance on § 502(a)(3), however, the [Supreme] Court had no occasion to consider whether the damages the plaintiff sought were available under that section." *Corcoran*, 965 F.2d at 1335.

"The characterization of equitable relief as encompassing damages necessary to make the plaintiff whole may well be consistent with the trust law principles that were incorporated into ERISA and which guide its interpretation." *Id.* at 1336 (citing *Firestone*, 489 U.S. 101, 109 S.Ct. 948). But the Fifth Circuit in *Corcoran* did not reach the

question of whether damages, other than money for emotional injuries, are available under § 502(a)(3). In *Corcoran,* parents sought to recover damages for emotional distress resulting from the death of an unborn child against a utilization review services company who was providing services pursuant to an insurance plan governed by ERISA. The parents sought to recover the damages under § 502(a)(3) alleging a breach of fiduciary duty under § 404. The *Corcoran* court stated "[a]ssuming without deciding, therefore, that § 502(a)(3) permits the award of make-whole relief as 'other appropriate equitable relief,' we hold that the emotional distress and mental anguish damages sought here by the Corcorans are not recoverable." *Id.* at 1338. Thus, while the language of *Corcoran* seems to indicate that some types of make-whole extracontractual damages are available under § 502(a)(3), it is not clear what types of extracontractual damages are recoverable under Fifth Circuit law.

The language of *Corcoran* leads the court to believe that there are indeed extracontractual damages available when a plaintiff seeks to recover "appropriate equitable relief" under § 502(a)(3)(B). Moreover, violations of fiduciary duties may be remedied under § 502(a)(3)(B). The Fifth Circuit makes it clear that a plan beneficiary, and surely therefore a participant, "may sue under § 502(a)(3) for a breach of the fiduciary duties set forth in § 404." *Id.* at 1338. It follows then that such a suit may be brought by participants on their own behalf under § 502(a)(3)(B) as opposed to a suit for the benefit of the plan itself under § 502(a)(2). While certainly damages for emotional distress and punitive damages would not be available to Plaintiffs, other "make-whole" relief is apparently available according to *Corcoran.* See *Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1464 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). (punitive damages are not available as "equitable relief" under § 502(a)(3)(B) of ERISA).

As indicated in the language already quoted from the *Christopher* court, the Fifth Circuit does not believe standing as a "participant" should be denied to a former employee who would be a *current* employee with a reasonable expectation of receiving benefits but for his employer's conduct. *Christopher,* 950 F.2d at 1221. The employer should not be able to defeat the former employee's standing because of its own malfeasance. *Id.* As the court observed regarding wrongful discharge, "[a] discharge to prevent vesting of benefits in violation of section 510 by definition must be challenged by someone other than a current employee or someone with a claim to vested benefits." *Id.* at 1222. Likewise, when a former employee alleges that a breach of fiduciary duty, namely the failure to disclose material information, resulted in his detrimental early retirement, this would also by definition have to be alleged and asserted by someone who is no longer an employee and probably has no more claims to vested benefits. Thus, as in the case of wrongful discharge, the standing issue and the merits of a former employee's claims are unavoidably intertwined to a degree. *Id.* According to *Christopher,* Plaintiffs have standing to assert ERISA rights if they can establish *some conduct* in violation of ERISA. *Id.* Plaintiffs should be afforded the right to prove these allegations regarding breach of fiduciary duty and thereby establish standing to assert these claims for relief at trial.

IT IS, therefore, ORDERED that Plaintiffs' Motion For Leave to File Second Amended Complaint is GRANTED.